

FILED

DEC 29 2008

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

# FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re | Case No.  08-14555-B-7 |
| George John Baeza and<br>Julie Ann Baeza, | DC No. UST-1 |
| Debtors. | |

## MEMORANDUM DECISION REGARDING UNITED STATES TRUSTEE'S MOTION TO DISMISS

Mark L. Pope, Esq., Assistant U.S. Trustee, appeared on behalf of Sara L. Kistler, Esq., Acting U.S. Trustee.

Glen E. Gates, Esq., appeared on behalf of the debtors, George John Baeza and Julie Ann Baeza (the "Debtors").

The United States Trustee ("UST") disputes certain deductions claimed by the Debtors on Form 22A (the "Means Test").   Based thereon, the UST moves to dismiss this case as a presumed abuse of chapter 7 pursuant to 11 U.S.C. § 707(b)(2).[1]   In the alternative, the UST contends that the Debtors have the ability to repay a substantial portion of their debts through a chapter 13 plan.   The UST asks that the case be dismissed as an abuse of chapter 7 based on the totality of the circumstances of the Debtors' financial situation pursuant to § 707(b)(3) (the "Motion").   In response, the Debtors

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *after* October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23 (hereafter "BAPCPA").



1  contend that they would not be required to pay anything to their unsecured creditors in a

2  chapter 13. For the reasons set forth below, the UST's Motion will be granted.

3      This memorandum decision contains the court's findings of fact and conclusions

4  of law required by Federal Rule of Civil Procedure 52(a), made applicable to this

5  contested matter by Federal Rule of Bankruptcy Procedure 7052. The court has

6  jurisdiction over this matter pursuant to 28 U.S.C. § 1334, 11 U.S.C. § 707, and General

7  Orders 182 and 330 of the U.S. District Court for the Eastern District of California. This

8  is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A).

9  **Findings of Fact.**

10      The Debtors filed a voluntary petition for relief under chapter 7 of the Bankruptcy

11  Code on July 31, 2008. The Debtors are individuals with primarily consumer debts.

12  Their scheduled unsecured debts total $53,889 and their scheduled secured debts total

13  $436,777. Based on the statement of intention filed with the petition, the Debtors intend

14  to surrender the collateral for almost all of their secured debt, approximately $433,876,

15  including their home, one vehicle, an ATV, and a travel trailer.[2] Consequently, the

16  Debtors' only remaining secured debt will be $2,900 for an automobile.

17      The Debtors' combined current monthly income ("CMI") as stated in their

18  amended Means Test is $10,348. Their annualized income (CMI x 12) is $124,176,

19  which exceeds the median income for a family of five in California. The Debtors claim

20  deductions in the Means Test totaling $11,466 per month. The resulting "monthly

21  disposable income" is stated to be a negative $1,118.18.

22      The Debtors' amended schedules I and J give a different picture of their current

23  financial situation.[3] Schedule I lists a combined average monthly gross income in the

24  _____

25      [2]The court has already granted relief from the automatic stay with regard to the Debtors'
   home mortgage. The Debtors did not reaffirm the debt secured by the travel trailer and the
26  automatic stay as to that asset was allowed to terminate by operation of law. § 362(h)(l).

27      [3]The CMI stated in the Means Test must reflect the average monthly income received
28  from all sources during the six calendar months *prior* to the filing of the bankruptcy case. This

2

1  amount of $7,616.  Their average monthly net income is $5,883.  Schedule J lists monthly
2  expenses in the amount of $5,404, which include:  $525 for utilities; $300 for home
3  maintenance; $800 for food; $400 for clothing, laundry and dry-cleaning; $500 for
4  transportation; $200 for recreation; $50 for charitable contributions; $480 for auto and
5  other insurance costs; a car payment of $110; education expenses for their children of
6  $100; and $59 for a membership in "George Brown Gym."  After deducting these
7  expenses from the available net income, the Debtors are left with $479 each month.  The
8  UST contends that this is enough money to pay a substantial portion of the scheduled
9  unsecured debts through a 60-month chapter 13 plan.

10  **Issues Presented.**

11      The first issue is whether this case is presumptively abusive under § 707(b)(2).
12  Second, the court is asked to decide if the case is an abuse of chapter 7 based on the
13  totality of the circumstances of the debtor's financial situation under § 707(b)(3).  A
14  threshold question to the second issue is whether the "totality of the circumstances" test
15  requires the court to look forward and decide if the Debtors would actually be required to
16  pay anything to their unsecured creditors through a chapter 13 plan.

17  **Overview of § 707(b).**

18      The chapter 7 case of an individual debtor whose debts are primarily consumer
19  debts may be dismissed under § 707(b)(1) if the court finds, after notice and a hearing,
20  that the granting of a discharge would be an abuse of chapter 7.  BAPCPA offers two
21  standards for determining the "abuse" issue.  Abuse may be presumed under the objective
22  test prescribed in § 707(b)(2),[4] the Means Test.  The function of the Means Test is to

23
24  _____

number often does not reflect the actual financial situation at the time of filing.

25
26  [4]Section 707(b)(2)(A)(I) states in pertinent part:

27  "[T]he court shall presume abuse exists if the debtor's current monthly income reduced
    by the [allowed deductions] . . . and multiplied by 60 is not less than the lesser of–
28          (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,575,

3

estimate the ability of chapter 7 debtors to repay their debts.  If the debtor's annualized income exceeds the applicable median family income, and the Means Test shows that the debtor has the ability to repay the lesser of 25% of the nonpriority unsecured claims, or $10,950, over a period of five years, then a presumption of abuse arises.  Section 707(b)(2)(A) prescribes a comprehensive list of allowable expenses for making that determination.

Section 707(b)(3) offers a more subjective test for abuse based on the debtor's good faith and the "totality of the circumstances . . . of the debtor's financial situation . . . ."[5]  Unlike the Means Test, the Bankruptcy Code does not define "totality of the circumstances."  In addition, there is little case law interpreting the phrase under BAPCPA.  Prior to BAPCPA, the Ninth Circuit looked to the "totality of the circumstances" to interpret the term "substantial abuse" in former § 707(b).[6]  *In re Price*, 353 F.3d 1135, 1139-40 (9th Cir. 2004).  Because Congress retained the phrase "totality of the circumstances" in BAPCPA, the court may look to pre-BAPCPA case law to construe the meaning of that phrase under § 707(b)(3).

---

whichever is greater; or–
    (II) $10,950."

[5]Section 707(b)(3) provides in pertinent part:

(3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(I) of such paragraph does not arise or is rebutted, the court shall consider–
    (A) whether the debtor filed the petition in bad faith; or
    (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse.

[6]Prior to BAPCPA, the court was required to find "substantial abuse" based solely on the "totality of the circumstances" test.  The Bankruptcy Code also fixed a presumption *against* abuse in favor of the debtor.  With the enactment of BAPCPA, the term "substantial" was deleted from the statute.  BAPCPA also dropped the presumption in favor of the debtor.  Because BAPCPA lowered the "abuse" standard, the former "substantial abuse" factors are still relevant to the new "abuse" inquiry.

4

## Analysis.

### Presumption of Abuse.

The UST contends that the Debtors' case is presumed to be an abuse of chapter 7 because the Debtors' annualized income greatly exceeds the median family income and they have enough "disposable income" to pay at least $10,950 over 60 months. § 707(b)(2). The Debtors' disposable income is in dispute here because they claimed an enormous deduction on their Means Test, $3,969 per month, based on contractual payments to secured creditors pursuant to § 707(b)(2)(A)(iii). However, the collateral for most of this secured debt has been or will be for surrendered in the bankruptcy.

The Debtors respond that the presumption of abuse does not apply because the monthly deduction for secured debts should be based upon the contracts in effect as of the commencement of the bankruptcy case. They argue that they are entitled to deduct the contractual payments to secured creditors even though they have stopped making the payments and are in the process of surrendering the collateral. There appears to be no dispute that if the contractual payments are considered, then the Debtors will "pass" the Means Test, meaning that their disposable income will be below the threshold for "presumed abuse" as set forth in § 707(b)(2). Conversely, if the payments for surrendered collateral are not considered, then the Debtors will have disposable income well in excess of the threshold which triggers the presumption of abuse.

Alternatively, the UST argues that the Debtors' case is an abuse of chapter 7 based on the totality of the circumstances of the Debtors' financial situation under § 707(b)(3). Subsections 707(b)(2) and (b)(3) are mutually exclusive. The court need not address the § 707(b)(2) argument summarized above, if it otherwise finds an abuse of chapter 7 under § 707(b)(3). Even if the court were to conclude that the Debtors pass the Means Test without creating a presumption of abuse, it is inconsequential if the case is otherwise "abusive" under § 707(b)(3).

Section 707(b)(3) clearly states that the court shall consider whether the totality of the circumstances of the debtor's financial situation demonstrates abuse when the

5

presumption *does not* arise. *See In re Paret*, 347 B.R. 12 (Bankr. D. Del. 2006) (the term "shall" in § 707(b)(3) "explicitly mandates" consideration of the totality of the circumstances to determine whether abuse exists if the presumption of abuse under § 707(b)(2) does not arise or is rebutted); *see also* Eugene R. Wedoff, *Means Testing in the New § 707(B)*, 79 Am. Bankr. L.J. 231, 236 (2005) ("[B]ecause the general abuse provisions of § 707(b)(3) expressly apply when the means test has been rebutted, 'passing' the means test does not preclude a discretionary finding of abuse by the court. . . . [I]f a debtor's overall financial circumstances would easily allow the debtor to repay debts . . . the court may find abuse.").

### Abuse Under the Totality of the Circumstances.

In *Price*, the Ninth Circuit prescribed some nonexclusive factors for courts to consider when reviewing the "totality of the circumstances" under § 707(b):

> (1) Whether the debtor has a likelihood of sufficient future income to fund a Chapter 11, 12, or 13 plan which would pay a substantial portion of the unsecured claims;
>
> (2) Whether the debtor's petition was filed as a consequence of illness, disability, unemployment, or some other calamity;
>
> (3) Whether the schedules suggest the debtor obtained cash advancements and consumer goods on credit exceeding his or her ability to repay them;
>
> (4) Whether the debtor's proposed family budget is excessive or extravagant;
>
> (5) Whether the debtor's statement of income and expenses is misrepresentative of the debtor's financial condition; and
>
> (6) Whether the debtor has engaged in eve-of-bankruptcy purchases.

*In re Price*, 353 F.3d at 1139-40.

The court in *Price* went on to state that the debtor's *ability* to repay his debts is the primary factor in determining substantial abuse; "The primary factor defining substantial abuse is the debtor's *ability* to pay his debts *as determined by the ability to fund a Chapter 13 plan*. Thus, we have concluded that a 'debtor's *ability to pay his debts* will, standing alone, justify a section 707(b) dismissal.'" *Id.* at 1140 (quoting *Zolg v. Kelly, III (In re Kelly)*, 841 F.2d 908, 914 (9th Cir. 1988)) (emphasis added).

1    The Debtors contend that their ability to pay creditors should not be part of the

2  "totality of the circumstances" inquiry.  This issue has been addressed, on similar facts, in

3  a post-BAPCPA chapter 7 decision, *In re Pak*, 343 B.R. 239 (Bankr. N.D. Cal. 2006).

4  The chapter 7 debtor was unemployed for the six months prior to his bankruptcy and,

5  consequently, was not subject to the chapter 7 Means Test and the presumption of abuse

6  standard.  After the period of unemployment, the debtor returned to work and was earning

7  an annualized income of more than $100,000.  The United States Trustee moved to

8  dismiss the case as an abuse of chapter 7 pursuant to § 707(b)(3).  Because the Means

9  Test formula did not apply to the debtor, he argued that his ability to pay debts was not a

10  part of the "totality of the circumstances" test for abuse.  The court rejected that argument

11  and granted the United States Trustee's motion stating:

12              The Court also finds instructive section 707(b)(3)'s use of the phrase
            "the totality of the circumstances."  Prior to BAPCPA, courts
13              considered whether to dismiss a consumer case for "substantial
            abuse" under section 707(b)(1) based on the "totality of the
14              circumstances."  All courts considered the debtor's ability to pay to
            be an important factor in this context.  It would be counterintuitive to
15              construe this same phrase, as used in BAPCPA, to exclude a
            consideration of the debtor's ability to pay.[7]
16

17  *Id.* at 243 (internal citation omitted).

18    Turning now to the facts of this case, it appears that at least two of the *Price*

19  factors, the first and second, are relevant.  The Debtors have enjoyed an annual income

20  that is substantially more than the applicable median family income in California.  While

21  their income may have recently decreased, they also are no longer burdened with

22  oppressive payments to secured creditors which consumed a large percentage of their

23

24              [7]The debtor in *Pak* converted his case to chapter 13 and tried to confirm a plan which did

25  not pay anything to unsecured creditors.  The court denied confirmation.  *In re Pak*, 357 B.R. 549
    (Bankr. N.D. Cal. 2006).  The Bankruptcy Appellate Panel affirmed holding that "projected

26  disposable income" is a "forward-looking" concept and not tied to the prepetition income.  *In re
    Pak*, 378 B.R. 257, 264 (9th Cir. BAP 2007).  That reasoning was subsequently rejected by the

27  Ninth Circuit in *Maney v. Kagenveama (In re Kagenveama)*, 541 F.3d 868, 874 (9th Cir. 2008)

28  (*see* footnote 8, *infra*).

1    income.  There is no showing that the Debtors filed this joint petition as a result of illness,

2    disability, unemployment, or calamity.  The Debtors' own schedules show that the

3    Debtors have *the ability to repay* a substantial portion of their unsecured debts based on

4    their current financial situation.  In the case of *Hebbring v. U.S. Trustee*, 463 F.3d 902

5    (9th Cir. 2006), the Ninth Circuit affirmed the dismissal of a chapter 7 case for

6    *substantial* abuse where the debtor could afford to pay as little as 27% to her unsecured

7    creditors over three years.  *Id.* at 908-09.

8    ### **Predicting Payments in a Hypothetical Chapter 13.**

9            The Debtors argue that the "totality of the circumstances" inquiry compels the

10   court to predict what would be required of the Debtors in a hypothetical chapter 13.  They

11   contend, based on the Ninth Circuit's recent decision in *In re Kagenveama, supra* 541

12   F.3d. at 868, that they could confirm a "zero payment" chapter 13 plan because the

13   chapter 13 Means Test, Form 22C, would show that they do not have any disposable

14   income.[8]  If the Debtors would not have to pay anything to their creditors through a

15   chapter 13 plan, they contend that a discharge in this case would not be an "abuse" of

16   chapter 7.

17           The Debtors' argument mischaracterizes the issue and misstates the law.  The

18   question before the court is not whether the Debtors *would be required* to pay anything to

19   their unsecured creditors in a chapter 13, but rather, whether they have the *ability to pay*

20   something substantial to their unsecured creditors.  The answer to that question is

21   unequivocally yes.  The Debtors focus on the first half of the operative language in

22   § 707(b)(3)(B), the "totality of the circumstances" phrase without addressing the phrase,

23   "of the debtor's financial situation."  By the plain meaning of § 707(b)(3)(B), the court

24   _____

25           [8]In *In re Kagenveama*, the debtor's chapter 13 Means Test showed that she had a negative
disposable income based on her prepetition circumstances.  The Ninth Circuit held that a debtor's
26   "projected disposable income" for purposes of chapter 13 plan confirmation (1325(b)(1)(B)) is
determined by the statutory formula stated in § 1325(b)(2)-(3), which in turn is tied to the
27   "Means Test" expense calculations in § 707(b)(2).  The court ruled that the debtor had no
disposable income to pay to her unsecured creditors.  541 F.3d at 877.
28

must consider the Debtors' actual financial situation. The test under § 707(b)(3) is not tied to or limited by the statutory Means Test formula that drives § 707(b)(2). For that reason alone, the Debtors' argument should be rejected.

This is not the time or the place to determine what the Debtors would be required to pay in a hypothetical chapter 13.[9] This is not a chapter 13 case and the person to ask the "confirmation" questions in a chapter 13 would be the chapter 13 trustee who is not a party in this case. The Debtors do not deny that they have the *ability to repay* a substantial amount to their unsecured creditors without placing an undue burden on the Debtors or their dependants. Based on the Debtors' schedules, they have the *ability to pay* approximately $479 per month to fund a chapter 13 plan for the benefit of those creditors.

The Debtors' reliance on *In re Kagenveama* is misplaced. *Kagenveama* deals with confirmation of a plan under § 1325. There is nothing in *Kagenveama* to suggest that its holding should be applied to § 707(b). Indeed, even the *Kagenveama* court recognized that the Means Test may not be the end of the inquiry in a chapter 13, "[w]e stress that nothing in our opinion prevents the debtor, the trustee, or the holder of an allowed unsecured claim to request modification of the [chapter 13] plan after confirmation pursuant to § 1329." 541 F.3d at 877. Further, *Kagenveama* only dealt with one element of chapter 13 plan confirmation, the "disposable income" test under § 1325(b)(1)(B). There are other factors which a chapter 13 trustee is entitled to examine and which a debtor must satisfy to confirm a plan in chapter 13. Most notable of these are the "good

---

[9]The chapter 7 bankruptcy court in *Pak* did try to analyze what the debtor would have to pay to creditors in a chapter 13 and found that the debtor could pay $33,497.28 to his creditors through a 36-month chapter 13 plan. 343 B.R. at 244-46. However, in reaching that result, the *Pak* court applied an "anticipated future income" definition to the term "projected disposable income," which was subsequently rejected in *Kagenveama*. 541 F.3d at 874. The *Pak* court had already determined that the case was abusive under § 707(b)(3) based on the debtor's actual ability to pay, and the hypothetical chapter 13 analysis was not necessary to support the ruling.

9

faith" inquiries under §§ 1325(a)(3) and (a)(7),[10] and the chapter 7 liquidation test under § 1325(a)(4).[11]

**Conclusion.**

Based on the foregoing, the court finds and concludes, based on the totality of the circumstances, that the Debtors have the ability to pay a substantial portion of the debts for which they seek a discharge and that the granting of a discharge in this case would be an abuse of chapter 7. Accordingly, the UST's motion to dismiss will be granted unless the Debtors voluntarily convert their case to chapter 13 and file a chapter 13 plan within

---

[10]The court is aware of the pre-BAPCPA case law which held that "good faith" under § 1325(a)(3) does not require a substantial repayment to unsecured creditors. (*Goeb v. Heid (In re Goeb)*, 675 F.2d 1386 (9th Cir. 1982)). However, prior to BAPCPA, the "good faith" inquiry bore some relationship to the debtor's actual financial condition. The debtors in *Goeb* did not have enough disposable income to make a substantial payment to their unsecured creditors. Congress changed the definition of "disposable income" with the enactment of BAPCPA to a formula which, as here, may bear no relationship to the debtor's financial situation. Accordingly, it is not clear that the holding in *Goeb* would still apply when the debtors can actually afford to pay a substantial dividend to their unsecured creditors. Even the *Goeb* court recognized that the debtors must act equitably in proposing their chapter 13 plan. "[T]he court must make its good-faith determination in the light of *all* militating factors." *Id.* at 1390 (emphasis in original). The Debtors refer the court to a recent unpublished bankruptcy court decision, *In re Smith*, 2008 WL 4964720 (Bankr. W.D. Wash.), in which the court concluded, on facts similar to this case, that the chapter 13 plan was filed in good faith so long as it meets the statutory disposable income requirement. At least one other bankruptcy court has found that the "good faith" test was not satisfied when a debtor with no "disposable income" could actually pay his creditors in full. *In re Marti*, 393 B.R. 697 (Bankr. D.Neb. 2008). The court in *Marti* found that the Means Test is meaningless when the debtor had no income prior to filing and a substantial income immediately after filing. 393 B.R. at 701. The "good faith" issue appears to be unsettled on these facts in the Ninth Circuit.

[11]11 U.S.C. § 1325(a)(4) provides in pertinent part:

(a) Except as provided in subsection (b), the court shall confirm a plan if–

. . .

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date.

10

10 days from service of this ruling.  If the case is not so converted, then the UST shall
submit an order dismissing this case.

Dated: December ___29___, 2008


W. Richard Lee
United States Bankruptcy Judge